UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| MICHAEL WOODWARD VINCENT,  ) | Civil Action No.: 4:15-cv-2867-MGL-TER |
| ) | |
| Plaintiff,   ) | |
| ) | |
| -vs-   ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN,   ) | |
| Commissioner of Social Security;   ) | |
| ) | |
| Defendant.   ) | |
| _____ ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.

## I. RELEVANT BACKGROUND

**A.     Procedural History**

Plaintiff filed an application for DIB and for Disabled Widower's Benefits (DWB) on March 14, 2012, alleging inability to work since February 28, 2012. (Tr. 202, 204). His claims were denied initially and his DIB claim was denied upon reconsideration.[1] (Tr. 98, 112). Thereafter, Plaintiff filed a request for a hearing. (Tr. 114). A hearing was held on December 4, 2013, at which time the Plaintiff and a vocational expert (VE) testified. (Tr. 28-59). The Administrative Law Judge (ALJ)

---

[1]The agency did not consider Plaintiff's DWB claim on reconsideration, but the ALJ considered both Plaintiff's DIB and DWB claims during the December 4, 2013, hearing and in his January 10, 2014, decision. (Tr. 13-14; 32-33). The analysis herein is applicable to both claims.

issued an unfavorable decision on January 10, 2014, finding that Plaintiff was not disabled within the meaning of the Act. (Tr.10-27). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. (Tr. 1-5). Plaintiff filed an action in this court on July 22, 2015.

**B.     Plaintiff's Background and Medical History**

   **1.     Introductory Facts**

Plaintiff was born on July 9, 1957, and was 54 years old at the time of the alleged onset. (Tr. 194). Plaintiff completed his education through two years of college and has past relevant work experience as a corrections officer, convenience store clerk and pest control sales agent. (Tr. 21, 35).

   **2.     Medical Records and Opinions**

On February 28, 2012, Plaintiff presented to the Medical University of South Carolina emergency room (MUSC ER) with complains of left sided weakness. A CT scan was normal. He was transferred to the VA, where he received most of his care. (Tr. 300-07).

An MRI of the cervical spine dated February 29, 2012, revealed a mature C5 to C7 fusion with some discogenic disease at C4-5 (progressed slightly) and C7-T1 (improved) which were adjacent to the fused levels. (Tr. 315). After close neurologic exam at the VA, it was thought that Plaintiff's symptoms were more likely due to progression of cervical spine disease. Plaintiff was referred back to primary care with instructions to control diabetes and undergo EMG/NCS. (Tr. 343-345). A VA consult record indicated Plaintiff had a 60% service connected diability resulting from paralysis of sciatic nerve, degenerative arthritis of spine, limited motion of the wrist and paralysis of the ulnar nerve. (Tr. 346-48). An occupational therapy note identified "somatiform disorder with anxiety and depression" as part of Plaintiff's past medical history. Therapy was not

found to be necessary. (Tr. 561).

On March 2, 2012, Plaintiff presented to the VA ER for neuromuscular weakness with symptoms in the left arm, leg, and face. He also complained of a headache, cough, and dizziness. He was referred to neurology and his primary care doctor. (Tr. 537-39). On April 5, 2012, Plaintiff was seen at the VA in follow up for chronic conditions including GERD, headache, diabetes, and arthralgia. (Tr. 517-20).

On April 27, 2012, Plaintiff's physicians indicated that the cause of the numbness and pain in his left arm was still under investigation. (Tr. 511). A neurology note the same day indicated that Plaintiff presented with a "litany of somatic complaints." He reported headaches, back spasms, numbness and pain in his arm. He complained of "nausea" and "feeling like a zombie" and had stopped taking many medications due to perceived side-effects. He remained on Glipizide, insulin, and aspirin. He did not feel he was ready to drive or return to work. On exam, strength and sensation were normal, although strength limited by pain in the left arm, but without apparent weakness. Impression was cervical radiculopathy and chronic headaches. Plan was to start gabapentin, lisinopril, and get an EMG/NCS. In an addendum note the neurologist observed that there "appears to be a psychiatric component to [his] pain." (Tr. 512-15).

An EMG on May 8, 2012 was normal. (Tr. 347).

On July 9, 2012, Dr. Martz wrote that MRI evidence of prior cervical fusion combined with mild suggestion by EMG of nerve irritation of the left arm suggested that nerve damage had occurred and was likely chronic. He suggested Plaintiff find a new job, or alter his duties at his current one. (Tr. 1402).

On August 21, 2012, at a neurology follow-up Plaintiff's doctors wrote that "[h]e ruminates

on his symptoms even when they have been verbally addressed. Plaintiff stated he was feeling no better. His complaints centered on neck pain, muscle spasm, and headache. It was thought that it was "possible much of his pain is the result of an irritated nerve. There is no clear source that is identified on the MRI, but that does not completely rule this out as a possibility." Plaintiff was referred to mental health, the sleep clinic, and pain clinic. In an addendum, Dr. Martz noted that he could not safely return to his prior job. Chronic pain was "severely limiting his quality of life." Possible sleep issues as well as mental health issues were thought to be intensifying his pain and it was noted that a multidisciplinary approach was being used to try to alleviate his symptoms. (Tr. 1388-89).

On August 29, 2012, Plaintiff underwent a mental health consultation. He presented upon referral from neurology. He had been seen for radiculopathy and headaches as well as various pains and blurry vision. He endorsed a long history of depression symptoms of irritability, insomnia, low appetite as well as anxiety symptoms including headache, nausea, diarrhea and blurry vision. He had been out of work since March and was experiencing financial difficulties. He had been on multiple medications for depression and endorsed side-effects. He was sarcastic with poor insight insofar as he did not understand that his somatic complaints were closely connected to his psychiatric presentation. Assessment was depression, anxiety, possible somatization disorder, and a GAF of 50. It was recommended that his Gabapentin be increased and that he begin Effexor, but he declined that. He also declined follow up. (Tr. 1322-27).

In September 2012, Plaintiff began treatment at the VA's pain clinic. (Tr. 1329-33).

Plaintiff presented to his primary care doctor October 5, 2012. He reported pain radiating down both arms for several days and requested medications refilled. (TR 1348).

An October 17, 2012 neurology note indicated that Plaintiff's pain likely had a psychiatric

component. (Tr. 1419).

On January 7, 2013 Plaintiff was seen at the Carolina Center for Occupational Health for evaluation of sciatic pain and muscle spasm in legs, shoulder and numbness in left hand resulting from the February 2012 injury. (Tr. 1501-02). Dr. Barry Weisglass noted, "to a medical certainty, he will never be able to perform the essential functions of his job, no reasonable accommodations exist." Dr. Weisglass recommended he be considered for medical disablity. (Tr. 1503).

An April 2013 neurology note indicated that biofeedback seemed to help Plaintiff (Tr. 1744-45).

An August 29, 2013, mental health note indicated "complex family dynamics" as well as somatic issues, depression, anxiety, irritability, and anger issues. His GAF was estimated to be 60. (Tr. 1745; 1771-73).

C.      The Administrative Proceedings

1.      The Administrative Hearing

Plaintiff was fifty-six years old at the time of the administrative hearing. (Tr. 34). He had a driver's license but did not drive. (Tr. 35). He had two years of college and last worked as a corrections officer. (Tr. 35, 88). Plaintiff stopped working in February 2012 after being injured when a prisoner fell on him. (Tr. 36). Thereafter, Plaintiff was hospitalized with complaints of stroke-like symptoms, which were ultimately diagnosed as muscle spasms. (Tr. 35). His worker's compensation claim was denied. (Tr. 35). Plaintiff alleged that he could not work as a result of "drugs, pain, falling down, dizziness." (Tr. 36). He attributed his pain to his earlier spinal and neck fusions, and his difficulty walking due to growths on his feet. (Tr. 36). He took Tylenol for pain relief. (Tr. 39).

At the time of the administrative hearing, Plaintiff lived with his son and handled his personal

care independently. (Tr. 45-46). During the day, he walked around his five acre property and visited stores to walk around. (Tr. 45, 47). Plaintiff testified that he could sit for fifteen minutes at a time, stand for five minutes, and walk a mile. (Tr. 41-42). His son helped him with shopping, cooking, cleaning, and transportation. (Tr. 48).

### 2.     The ALJ's Decision

In the decision of July 2, 2015, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements the Social Security Act through June 30, 2016.

2. It was previously found that the claimant is the unmarried widower of the deceased insured worker and has attained the age of 50. The claimant met the non-disability requirements for disabled widower's benefits set forth in section202(f) of the Social Security Act.

3. The prescribed period ended on June 30, 2013.

4. The claimant has not engaged in substantial gainful activity since February 28, 2012, the alleged onset date (20 CFR 404.1571 et seq.).

5. The claimant has the following severe impairments: degenerative disc disease, diabetes, and sleep apnea (20 CFR 404.1520(c)).

6. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

7. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to: sit, stand, and walk each for 6 hours of an 8-hour day; frequently lift/carry 10 pounds; occasionally lift 20 pounds; and never be exposed to unprotected heights or dangerous machinery.

8. The claimant is capable of performing past relevant work as a convenience store clerk and pest control. This work does not require the performance of

>     work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 9.  The claimant has not been under a disability, as defined in the Social Secmity Act, from February 28, 2012, through the date ofthis decision (20 CFR 404.1520(1).

(Tr. 13-22).

## II. DISCUSSION

The Plaintiff argues that the ALJ erred in his decision, and that reversal and remand are appropriate in this case. Specifically, Plaintiff raises the following issues in his brief, quoted verbatim:

I.  The ALJ did not consider Mr. Vincent's impairments in combination; and

II. The ALJ's RFC analysis was not based on substantial evidence.

(Plaintiff's brief p. 1).

The Commissioner argues that the ALJ's decision is supported by substantial evidence.

### A.  LEGAL FRAMEWORK

#### 1.  The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated

under the Act have reduced the statutory definition of disability to a series of five sequential questions. See, e.g., Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents him from doing SGA. See 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R.

---

[2]The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); see Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3]In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d) (5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir.2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. Hall v. Harris, 658 F.2d 260, 264–65 (4th Cir.1981); see generally Bowen v. Yuckert, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. See id.; Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Walls, 296 F.3d at 290 (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." Vitek v. Finch, 438 F.2d 1157, 1157–58 (4th Cir.1971); see Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir.1988) (citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.1986)). Rather, the

court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390, 401; Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir.2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. See Vitek, 438 F.2d at 1157–58; see also Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir.1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir.1972).

**B.     ANALYSIS**

    **1.     Combination of Impairments**

Plaintiff argues that the ALJ failed to make "particularized findings" on the combined impact of his physical and mental impairments.  See Hines v. Bowen, 872 F.2d 56, 59 (4th Cir. 1989). Plaintiff argues that the ALJ failed to explain his consideration of his impairments together as he was required to do pursuant to 20 C.F.R. § 404.1523 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.").

For a reviewing court to determine whether the Commissioner based a decision on substantial evidence, "the decision must include the reasons for the determination...." Green v. Chater, No. 94-2049, 1995 WL 478032, *7 (4th Cir.1995) (citing Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir.1986)). When dealing with a claimant with more than one impairment, the Commissioner "must

consider the combined effect of a claimant's impairments and not fragmentize them." <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir.1989) (citations omitted). This requires the ALJ to "adequately explain his or her evaluation of the combined effects of the impairments." <u>Id.</u> (citing <u>Reichenbach v. Heckler</u>, 808 F.2d 309, 312 (4th Cir.1985)). Whether or not the impairments are found to be severe, the ALJ must consider the severe and nonsevere complaints and impairments in combination in determining the Plaintiff's disability. Furthermore, "[a]s a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." <u>Walker</u>, 889 F.2d at 50. The ALJ's duty to consider the combined effect of Plaintiff's multiple impairments is not limited to one particular aspect of its review, but is to continue "throughout the disability process." 20 C.F.R. § 404.1523.

At step two of the sequential analysis, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease, diabetes, and sleep apnea. He considered Plaintiff's mental impairment of depression/anxiety and found that it does not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and is, therefore, non-severe. (Tr. 16). Nevertheless, as set forth above, the ALJ must consider both severe and non-severe impairments in combination. <u>Walker</u>, 889 F.2d at 50.

At step three, the ALJ specifically considered whether Plaintiff's neck and back problems, sleep apnea and diabetes met the relevant listings. (Tr. 17). He then stated

> Moreover, I have considered the combined effects of the claimant's impairments, both severe and non-severe, and have determined that the findings related to them are not at least equal in severity to those described in Listings 1.04, 3.10, 9,00, or 12.00. <u>See</u> also <u>Walker v. Bowen</u>, 889 F.2d 47 (4th Cir. 1989). While the combination of claimant's impairments imposes some limitations, there is no indication in the record that the claimant's ability to sustain consistent function has been complicated by the combination of these impairments or that the combination of the claimant's

> impairments imposes greater limitations than those inherent in the residual functional capacity stated below.

(Tr. 17). Although the ALJ does not specifically mention any mental impairments here, he does include the 12.00 category of Listings, which are the Listings for psychological disorders. 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ later discusses the record evidence of Plaintiff's mental impairments:

> [W]hile the claimant's severe impairments include degenerative disc disease and sleep apnea, the record also repeatedly references the claimant's somatization and suggests that he is histrionic regarding his subjective complaints of pain. His treating neurologist openly acknowledges the the objective findings are not consistent with the nature or extent of the claimant's complaints. In fact, "hypochondriasis" is included as one of the claimant's medical diagnoses (Exhibit 13F/2). A psychological evaluation from August 2012 noted multiple somatic complaints with the claimant being assigned diagnoses of depression, anxiety, and rule out somatization disorder. It was noted that the claimant had poor insight and did not understand that his somatic symptoms were connected to his psychiatric complaints. However, at the conclusion of his visit, the claimant reported having no interest in following up with psychiatric treatment (Exhibit 7F/46-50). In August 2012, Dr. Gabriel Martz, his treating neurologist, noted "[w]hile he had objective findings supporting his pain symptoms, they appear perhaps out of proportion in terms of the severity he reports" (Exhibit 9F/93). In October 2012, Dr. Martz noted that the claimant ruminated on his symptoms even if they have been addressed or discussed. He also noted that the objective findings did not explain the extent of the claimant's pain (Exhibit 7F/178-80). In October 2013, it was noted that the claimant did not believe the results of a recent EMG which was normal.

(Tr. 18-19). The ALJ further stated, "[w]hile claimant was assigned a Global Assessment Functional score of 55 on January 29, 2013, subsequent Global Assessment Functioning scores do not fall below 60 (Ex. 13F). Mental status exam in August 2013 was noted to be good with the exception of the claimant's somatic complaints." (Tr. 19). As noted above, Walker requires the ALJ to "adequately explain his or her evaluation of the combined effects of the impairments." Walker, 889 F.2d at 50. However, Walker was not meant to be used as a trap for the Commissioner. See Brown v. Astrue,

C/A No. 0:10–1584–RBH, 2012 WL 3716792, at *6 (D.S.C. Aug.28, 2012). The adequacy requirement "is met if it is clear from the decision as a whole that the Commissioner considered the combined effect of a claimant's impairments." Id. A review of the ALJ's decision as a whole reveals that he performed an adequate combined effect analysis of Plaintiff's multiple impairments such that remand is unnecessary.

### 2. RFC Assessment

Plaintiff next argues that ALJ failed to account for his "well-documented mental impairments in any meaningful way." (Pl. Brief 8). Specifically, he argues that the ALJ failed to explain what weight, if any, Plaintiff's mental impairments played in steps four and five of the sequential process.

A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). An ALJ must determine a claimant's capacity "for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). SSR 96-8p specifies that, the "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Although Plaintiff argues that the ALJ failed to properly consider his mental impairment, he fails to point to the specific mental impairment the ALJ should have considered nor does he point to medical evidence in the record supporting a mental limitation. As set forth above, the ALJ did discuss Plaintiff's limited mental health records.[4] None of the records indicate that Plaintiff suffered from any anxiety or depression that restricted his ability to work. In fact, a depression screening in October of 2013 suggested that he was not depressed. (Tr. 1742-43). For

---

[4] In fact, Plaintiff declined any mental health treatment following an evaluation in August of 2012. (Tr. 1322-27).

these reasons, Plaintiff's argument here is without merit, and the ALJ's decision is supported by substantial evidence.

**III.      CONCLUSION**

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. <u>Richardson</u>, 402 U.S. at 390. As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this Court finds that the ALJ's findings are supported by substantial evidence. Therefore, it is RECOMMENDED that the Commissioner's decision be AFFIRMED.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

December 13, 2016
Florence, South Carolina